Our next case is United States v. Chaves-Leiva, No. 17-3545. Good morning, Your Honor. May it please the Court. My name is Jacob Schuman, and I represent the appellant, Jose Chaves-Leiva. May I please reserve three minutes of my time for rebuttal? That would be great. Thank you. The question in this case is whether it was fundamentally unfair for the government to deport Mr. Chaves in violation of its own regulation intended to protect his right to make a considered judgment when deciding whether to waive his right to a deportation hearing. Is that really the question here? It's a criminal matter. Your adversary pointed out that despite the fact that your client insisted on a hearing, and it didn't go well, I guess, in terms of the findings, that it's basically forgotten about in your briefs and in your arguments. I mean, isn't it enough that the district court held the hearing and went the way it did? No, I don't think so. I mean, the district court specifically declined to reach the issue of whether the government had violated the regulation. It's in a footnote on the last page of the opinion. It says it doesn't need to reach this issue. But do we need to reach the issue? You know, it's a criminal matter. It's a matter of whether this waiver was voluntary, and I know it didn't go well for your client, but do we really need to wade into the weeds here with immigration procedure? You do. Well, let me give you two answers to that. The first is that under 1326D, Mr. Chavez has a right to dismissal of the indictment if his prior deportation was fundamentally unfair, and it was fundamentally unfair. Why aren't Judge McHugh's findings on the hearing that was conducted dispositive of the question of whether it was fundamentally unfair? Because the judge never reached the issue of what Mr. Chavez's subjective understanding of the situation was when he decided to sign the waiver, and that, I mean, voluntary knowing and intelligent is a subjective standard. So let me give you a real crystal clear example. Mr. Chavez argued that at the time he signed the waiver, he thought that he would have to wait a very long time for a hearing if he didn't sign, and that's the only reason he signed the waiver, and that's why his waiver was not voluntary knowing and intelligent. The district court did not address that argument in its opinion. What it said is he could have expected to only wait two months, but there was no evidence in the record that he knew that. But the counsel, though, he followed the criminal statute and found there was no fundamental unfairness. But he didn't address the key issue in this appeal, which is what was Mr. Chavez's subjective understanding of the situation when he signed, and was the government's conduct in deporting Mr. Chavez in violation of its own regulations? So your legal position is that any time somebody accused of immigration crime wants to collaterally attack a waiver, that the district court has to conduct a de novo review of what occurred in the immigration proceedings, that somebody attacking, making a collateral attack on their immigration proceedings is entitled to de novo review in the context of a criminal case. That's not my position. That's the court's position. I'll refer you to the Charleswell case. But this case in Charleswell is to establish fundamental unfairness. When you say that's not your position, that is the position you're advocating. Well, yes. I misspoke. I'm advocating for the court to follow what it said in Charleswell, which is that if you can show a core procedural deficiency in your prior deportation. A core procedural deficiency. Yes. Right? So if in fact the regulations were followed, if there was not a technical violation of the regulations, would you still be saying there is a core deficiency? I would say it's more than a technical violation. But if the government had had an IJ properly determine that he voluntarily, knowingly, and intelligently waived his right to a hearing based on more than just the boilerplate in the document, then we would not be able to show a procedural deficiency. So everything hinges on the assertion that the regulations require the immigration judge to hold a hearing. Well, not a hearing. It could be a brief colloquy via telephone. It could be a signed statement from the immigration officer. But, yeah, I mean, everything hinges on the fact that according to the text and structure and the DOJ commentary of the regulation, what the IJ did hear was unlawful. Okay. Well, let's talk about that. It says the IJ may enter an order without a hearing in the absence of the parties based on a review of the charging document, the written stipulation, and the supporting documents, if any. That's what the regulation provides for, right? That's what it provides for, and then it says if the alien is unrepresented, the IJ must determine that the waiver was voluntary, knowing, and intelligent. Right. Is there something in that language that you think means that when there's an unrepresented alien, there has to be a hearing or something beyond the paperwork? Yeah. So let me give you a real clear example of that. The regulation requires that every waiver document include a provision that says the waiver is entered voluntary, knowingly, and intelligently. That's subsection 6. So if that boilerplate was enough for the IJ to make the determination that the waiver was voluntary, knowing, and intelligent, then the if the alien was unrepresented sentence would be doing no work whatsoever. No. Well, can't it be doing some work because the IJ is responsible not just for looking at the stipulation but reviewing, quote, the charging document and supporting documents, if any, as well as the stipulation. In other words, if the packet of materials, the papers, reveals some reason to be concerned, then the IJ has some responsibility beyond it. But if the packet of materials does not show some cause for concern, then there is no responsibility. Even if the party is unrepresented. Doesn't that added language, if the alien is unrepresented, et cetera, do work in that context? It's hard for me to imagine a situation where the charging document and the supporting documents could indicate that the alien was not. But isn't it possible that the charging document or supporting documents could, in fact, show there's something here that I ought to be worried about? Nothing about the alien's waiver, certainly. What the DOJ said is voluntary knowing and intelligence is meant to ensure maximum protection for the alien's considered judgment. And the DOJ commentary also says that when the IJ is confronted with a situation raising due process concerns, he can investigate further. So, I mean, just the government's. How would there ever be some, how could there ever be a secure waiver of rights if any defendant after the facts could say, as yours does, well, I only did it because I thought I was going to wait a long time. If that was enough to undermine the written waiver, then this whole process would be meaningless. I mean, that's the whole point of the regulation, requiring the IJ to do something more than just look at the documents. And in the context. Stick with me. Yeah. If we accept your argument, isn't every single unrepresented alien's waiver of rights subject to a collateral attack, an effective collateral attack undermining a later criminal charge? Not every single one, because many IJs comply with this regulation and do do more. But, no, I mean, if the IJ had a brief telephone colloquy with Mr. Chavez and said, do you understand the situation here? Why are you saying the waiver? What you're effectively saying is no IJ can ever just rely on the papers. Every IJ will always have to have some kind of hearing, whether telephonic or not, because otherwise there will always be an attack available collaterally after the fact to undermine a later criminal charge, because the alien can always say it wasn't knowing voluntary and intelligent and nobody talking about it. Isn't it going to always be the case that that's open to that attack? What I'm saying is that at bare minimum the IJ can't rely on boilerplate that's required by law to be in every waiver document anyway, because that's completely circular and contrary to the clear intent of the regulation. If the alien wrote a brief statement that said, I understand what I'm doing here. I'm entering this order because I want to be deported. I don't have any, you know, gross misunderstanding of the relevant circumstances in this case, something like that, that might be enough. That's what Gomez said. That's what the form says. What you're saying is they have to put it in their own hand? I think that does that does a little bit more work. And the Ninth Circuit suggested in Gomez that would be enough. And, you know, it's up to the court to decide precisely what's enough. But I think what's clearly not enough is is a boilerplate line in the document that says this is voluntary, no intelligence that's in every single document doesn't reveal anything about his state of mind when he signed it. Why is an agent Cox's testimony credited by Judge McHugh sufficient to show that this was not fundamentally unfair, that this fellow did understand his rights when he signed that waiver? Well, the officer admitted that he didn't didn't remember this case. But he talked about his procedure and the judge credited that. And he said, this is what I do in all these cases. That's true. And part of his procedure, he said, and this is on page 209 of the appendix, is that he never told the alien how long the wait would be if they refused to sign. What Mr. Chavez testified to at the hearing is that he thought it would be a very long wait. So just crediting Mr. Cox's testimony doesn't shed light on Mr. Chavez's state of mind. And you think that would have been covered by a colloquy. How long is it going to take? Well, I think often when you have a colloquy, things come up. And if the IJ said to Mr. Chavez in a brief colloquy, are you entering this order of your own free will? And he said, well, yeah, I don't want to wait a really long time for a hearing. Then that might have prompted the IJ to look further into the situation. And that's why under Rule 11G for guilty plea colloquies, it's required to have a verbatim recording of the defendant's understanding of his guilty plea. What the Fifth Circuit said, if you don't do that, it's just a problem that Judge Jordan mentioned. Years later, you have no idea whether or not the person really understood their rights. We need some sort of record, no matter how small and brief, to be sure. But an affidavit, a declaration from the agent, you would say, would suffice. That's what the Ninth Circuit said in Gomez. Some sort of declaration from the agent, individualized, describing the circumstances of the situation. But even what you just said in response to what Judge Van Aske said, I mean, you know, he wasn't sure about the amount of time. Can he collaterally attack it in years and say, well, I didn't know it was going to be such a short amount of time. Otherwise, I mean, there's I just worry that now we're talking about impeding the efficiency of what's contemplated through the stipulated removal proceedings. All of a sudden, it's like, you know, plea colloquy every time. And I don't think the system can handle that. I mean, I don't think it needs to be a full plea colloquy. This is the government's regulation that we're asking the court to enforce. And, you know, to the extent there's a danger of years later. You want to put you want to put some things on. I want to put a little bit more meat on the bone because that's what the DOJ said was necessary. But, you know, to the extent there's danger of years later, aliens coming back and attacking the validity of the waiver. That's because the government is violating the regulation that's designed to prevent that exact problem. Well, clearly, there's danger because that's why we're in this courtroom, because that's what's happening in this case. Because the government didn't follow the regulation, which is create a some sort of record, have the IJ make an independent factual determination outside the boilerplate. That's that is your interpretation of the regulation, which is what we're here discussing. You've recited Gomez a couple of times. Gomez is the Ninth Circuit case based on the Ninth Circuit's decision that the burden of proof is on the government. Right. The Ninth Circuit does put the burden of proof on the government. Gomez does not turn on that. In this circuit, the burden is on. That's right. Yeah. And that does not make a difference. And I direct the court to Gomez Hernandez, which is a district court case from the Eastern District of Washington. On page three, I can give you the full site. 2008 Westlaw 2096876. The district court said in exactly this sort of fact pattern, even if the burden is on the defendant, he met his burden to show the invalidity of the waiver because he testified that he never spoke to an IJ. And the government doesn't dispute that. And thus, he met his burden to show his waiver was invalid. And here, Mr. Chavez also testified that he thought it was going to be a really long wait to see an IJ. If you didn't wave, you didn't understand what voluntary departure meant. That's enough to invalidate the waiver. I'll save the rest for the ball. Thank you. Thank you. Good morning, Mayor. Pleased to court. Robert Zosmer on behalf of the government. I think the important place to start here, if I may, is with answering Judge Chigaris's first question, which, if I could paraphrase, is basically, what are we doing here? This is a criminal case. This is a criminal illegal reentry prosecution. This is not a review of an administrative action. And what we know is that the review, the collateral review of an earlier removal order in a illegal reentry prosecution is limited. It's limited under Section 1326 and under this court's precedent and TOR's and other cases to looking at whether basic requirements of due process were afforded. Well, you wouldn't disagree, would you, Mr. Zosmer, that a waiver has to be knowing, intelligent, and voluntary, or you do have a problem with some basic due process? Absolutely. And you're anticipating my next sentence, which is, that's what Judge McHugh did. He looked to make sure that the waiver was knowing and voluntary. And upon finding that, that ends the matter for criminal purposes. Would there be an issue if there were a motion, well, he did file a motion to reopen ten years later that did not succeed. But sure, he could proceed with this in the immigration court. But in this court, what matters is basic due process. Was he given notice of the charges? Was he given an opportunity to be heard? All of that can be waived, and he did, according to the district court, waive the knowingly and voluntarily. The difficulty in presenting this argument, Your Honors, is that we have a moving target here. If you look at the original filing that was made by the defense, it was all about whether it was knowing and voluntary. And the defendant presented a barrage of what turned out to be completely false claims, according to the district court's findings. The whole premise originally was, they never told me I had a right to counsel. The forms were pre-printed and were already checked. The agent came, the officer came and badgered me, the defendant testified, three or four times a week for a month. This was the gist of the argument that was presented to the district court. So Judge McHugh did what we need him to do. He held the hearing, he considered all that, and he rejected all of it. He found the defendant incredible. He found that the agent did not badger him, that the only reason the officer came back with the stipulated removal form was because the defendant asked him to, and we have the form where the defendant asked it. Everything was given to him in Spanish. You can look at the stipulated removal order, which paragraph by paragraph is translated into Spanish. So is your position that even if the defendant is correct that the immigration judge violated the statute and the associated regulations by not doing something beyond simply looking at the written stipulation, that even assuming that that were a regulatory violation, it just doesn't matter? That is our position. Now, of course, I don't concede that there was a regulatory violation. I don't want to make trouble for our immigration attorneys. But for purposes of this case, it does not matter if there was a regulatory violation. What matters is, was the waiver knowing and voluntary, and Judge McHugh has resolved that issue. We can go back in time, and we had the officer here, we had the records from the prison, we had everything that was necessary to do what my friend Mr. Schuman is correct, Charles Well tells us to do, which is show that it was a knowing and voluntary waiver. And at that point, whether there's a regulatory violation just is not consequential. Otherwise, this court would have to be the first court to hold that a violation of a regulation regarding removal proceedings is itself a due process violation. That's the only way that the defendant can get the relief he seeks, which is dismissal of this indictment. No court has held that, including the Ninth Circuit. The Ninth Circuit in Ramos and Gomez said, yes, the regulatory violation is significant, but then immediately discussed it in the context of those cases. And the context of those cases was, there was no valid description given to the aliens regarding their rights. Both of those cases came from the same detention facility, where they had the same flawed procedure of reading out a stipulation en masse to a whole group of people. That's what every court since has said. That's what Ramos and Gomez are all about. So even the Ninth Circuit doesn't say a bare regulatory violation by itself of not talking to an I.J. is a due process violation, and nor could I conceive of that in this circuit, given the explanation in Torres that the due process rights that are afforded to an alien are less than the panoply of rights that are given to a criminal defendant. But do you agree with Mr. Schuman that it doesn't matter where the burden of proof is placed? In this case, it doesn't. I mean, the law of this circuit is very clear, and some courts have also interpreted Ramos and Gomez's resting on the Ninth Circuit unique view that the burden rests on the government. But it's really not consequential here. What's consequential is that was this a knowing and voluntary waiver? And Judge McHugh disposes of it. Now, they do have one other argument in their reply brief that I'd like to address, which is that Judge McHugh didn't explicitly say, I find this waiver knowing and voluntary. He did use the word voluntary in the course of his opinion. But putting that aside, what he did was he responded point by point by point to every factual claim that was made by the defense as to why it wasn't knowing and voluntary. And in that context, the final footnote makes perfect sense. The final footnote of his opinion says, given my findings, I don't have to reach the question of whether the IJ was required to find that it was knowing and voluntary. That footnote only means that I've just found that it's knowing and voluntary, and he's done what Charles Well commands him to do. The last step in this sort of moving target here is I hear the argument from Mr. Schuman this morning, well, wait, his finding's not correct about the pressure he faced from thinking he's going to remain in custody. It sounds like this might now be a clear error argument as to the district court's factual findings. It's not. The court said maybe he was pressured by the fact that he had to wait, whether he knew of the length of time or not. That is such a common situation. It's common not just in immigration proceedings. It's common in criminal proceedings. Any criminal defendant could say I pled guilty because otherwise this could stretch out for years and I'm sitting here in custody. That's never been seen as a basis for invalidating a knowing and waiver admission, whether it's in the immigration context or the criminal context. So basically what we have here is a knowing and voluntary waiver. We have a rejection by the district court of all the false claims that Mr. Chavez-Leyva unfortunately made. And unless the court has further questions, I'll rest on that. Okay, thank you. Thank you, Mr. Zosma. A few points in response to my friend from the government. First, this is not a moving target, as the government claims. This was a key issue at the hearing, and it was extensively discussed and debated by the parties and by the court on pages 243 to 261 of the appendix. So, you know, Mr. Chavez made multiple arguments in the district court, and this was one of his key ones, and the district court didn't reach it. Well, let me stop when you say, and the district court didn't reach it. That's where there's a disconnect. I'm hearing Mr. Zosma say, no, the district court did reach it. It made a factual, it addressed the factual issues. It found your client incredible. It found Agent Cox credible, and it determined that, based on that, there was no fundamental unfairness and, indeed, your client was not to be believed. And there was a voluntary waiver. That's how the government poses this and says, that's all Charles Wells requires. And the footnote that you cite is nothing more than his way of saying, it doesn't matter whether the I.J. found it or not. I'm fine with it. I don't think that's what the court did. I think if you read the court's opinion carefully, you won't see the court ever say that his waiver was voluntary, knowing, and intelligent. And if that's what the court was doing, I don't think there was sufficient evidence to make that finding. So we are at a clear point. Because if we accept the government's position that that's what Judge McHugh did, then would you agree that if there was record support for it, that that's game up for your client? If there was record support that he knew how long the wait would really be and he really – If there was record support for Judge McHugh's conclusion, assuming that's what it is, I understand you don't accept that's the conclusion, but if his conclusion was, no, this is a voluntary, knowing, intelligent waiver, I'm looking at all the evidence and I believe the government and I don't believe Mr. Chavez, that's it. I don't quite agree with that because I think we've shown a core procedural deficiency, and I want to address the government's argument on that in a second. And then you get to the second question, which is prejudice. And even if the district court found that Mr. Chavez's waiver was, in fact, valid, I think the court really should consider a presumption of prejudice here because the government's misconduct in violating this regulation is severe and widespread. And we show in our brief a report from Stanford Law School that the government routinely violates the regulation in this way, although not all IJs do. So even if there's a finding of fact that says, no, this was a voluntary, intelligent waiver, you would say the fact that the IJ didn't find it means your client is prejudiced. I think that on the first point, we've shown the violation. On the second point, whether or not there would have been a different outcome, but for the violation, I think the court should presume prejudice. If the court doesn't presume prejudice, then a finding that his waiver was voluntary, knowing, and intelligent would be failed at the case. But I don't think that finding's in the district court's opinion, and I don't think there's enough evidence for it. If I may just address the government's argument that this was just a regulatory violation and not a due process violation, the key case on this point is Leslie. In Leslie, this court found, it was a direct appeal, but this court found that there was a regulation that required the IJ to give an unrepresented alien a list of free legal services, and the IJ didn't do that. And this court reversed the removal and said that it was fundamentally unfair because that regulation was intended to protect the alien's right to counsel. Now, there was no actual violation of the alien's right to counsel in that case. He wasn't affirmatively prohibited from having an attorney, but because the regulation was intended to protect that right and make it meaningful, the violation of it was fundamentally unfair. And you have the same situation in this case. The regulation requiring the IJ to make the determination of voluntariness was intended to protect his right to make a considered judgment. And so even though it's a regulation, violation of it did make the hearing fundamentally unfair. Thank you, counsel. Thanks. We'll take the case under advisement and thank counsel for their excellent briefing and oral argument, and we'd also like to meet you at a later time.